UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| **KING GEORGE MURRAY, III** | **CIVIL ACTION NO. 09-1571-LC** |
| **VS.** | **SECTION P** |
| **TONY MANCUSO, ET AL** | **JUDGE MINALDI** |
| | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is a pro se civil rights complaint (42 U.S.C. § 1983) filed *in forma pauperis* by King George Murray, III, on September 2, 2009.  Plaintiff is an inmate in the custody of the Louisiana Department of Corrections and is presently incarcerated at the Calcasieu Correctional Center (CCC), in Lake Charles, Louisiana.  As defendants herein, plaintiff names: Calcasieu Sheriff Tony Mancuso, CCC Wardens Lavergen, Scott Nugent, and Daniel Burkhalter; CCC Deputy/Supervisor Eldredge; CCC Deputy Cline; and, John Doe, unidentified Director of Internal Affairs at Calcasieu Parish Sheriff's Office.  Plaintiff alleges that his mail has been tampered with, and that he has been subjected to sexual harassment and racial discrimination.  As relief, he seeks "relief for personal injury, monetary relief, punitive damages, discrimination, mental anguish, and pain and suffering." [Doc.1 ¶ V].  Plaintiff also asks the court to prosecute the defendants.[1]

---

[1] In regard to plaintiff's request that the defendants be prosecuted for their alleged actions described herein, the undersigned notes that such relief is not available through this complaint.  This court cannot impose criminal charges on the defendants. Such actions are within the province of the police department and district attorney's office of the parish were the alleged incidences took place. The Court's duty is to review the plaintiff's

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.

## STATEMENT OF THE CASE

Plaintiff states that on June 26, 2009, he asked Deputy Cline about the lack of a law library in the facility. In response, Deputy Cline put his (Cline's) hand between his (Cline's) legs, grabbed his (Cline's) penis, and told plaintiff that he (Cline) wanted plaintiff to perform oral sex on him (Cline). Cline then cursed at plaintiff and threatened him. Cline again grabbed his (Cline's) penis, at which time plaintiff told him that he was going to report Cline to the Judge. Cline again cursed at plaintiff.

Plaintiff claims that he then told Supervisor Eldredge about the situation. Eldredge laughed at plaintiff and teased him. Plaintiff proceeded to file a grievance against Deputy Cline. Plaintiff states that Eldredge intentionally rejected the grievance in an attempt to cover up Deputy Cline's actions. Plaintiff notified all of the wardens and Judge Carter. Plaintiff's wife called one of the wardens as well as the internal affairs division (IAD). Plaintiff states that IAD sent out a "nice lady who through her, myself and the wardens tried to work things out. But on August 3, 2009, plaintiff went to Warden Nugent's office and filed a complaint against white deputies Cline and Eldredge." [Doc.1 ¶ IV]. Plaintiff states that IAD was aware that Cline and Eldredge had only beaten and sexually harassed black inmates.

Plaintiff also states that Sheriff Mancuso was aware of his complaints against deputies Cline and Eldredge but that Mancuso refused to send a detective in order for plaintiff to file

---

compliant for alleged violations of his constitutional rights, and not to act as a policeman for the plaintiff. Thus, plaintiff has failed to state a claim for which relief may be granted.

charges against the deputies. In fact, plaintiff claims that all of the defendants were trying to stop him from pressing charges. Mancuso did send a director from IAD but plaintiff claims that he knew nothing about civil law and told Warden Nugent that it was okay to open plaintiff's legal mail without plaintiff being present. Plaintiff states that Nugent did open and tamper with his mail, and that both Nugent and Warden Lavergen failed to act against Deputy Cline.

Plaintiff then states that on August 14, 2009, he was called out of his dorm to meet with all of the head wardens as well as the director from IAD. The director told plaintiff that he was not going to allow an investigation into plaintiff's complaints nor would he accept plaintiff's charges against deputies Cline and Eldredge. Plaintiff alleges that the IAD director also told him that if his wife called his office one more time to make a complaint, that he would have her arrested.

Further, plaintiff alleges that on August 25, 2009, he was denied access to legal material that passed his pod. He claims that he was told that he was not going be allowed to get his legal documents or the Louisiana Criminal Code.

## LAW AND ANALYSIS

1.  *Initial Review*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990). A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see,

*Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986). District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff has provided a description of the theories which he claims entitles him to relief and he has recited facts supporting those theories. Based upon plaintiff's pleadings, the court is convinced that plaintiff has presented the best case which could be presented by him under the circumstances, and that further amendment of the pleadings would serve no useful purpose. Accepting all of plaintiff's allegations as true, and giving plaintiff the benefit of every doubt, the

court concludes, for the reasons stated hereinafter, that he has failed to state a claim for relief, that his claims are frivolous as a matter of law, and that his complaint should therefore be dismissed with prejudice.

### 2. *Verbal Harassment*

To the extent plaintiff argues that disrespectful comments and gestures made by some of the defendants violates the Eighth Amendments prohibition against cruel and unusual punishment, his claim is without merit. The Fifth Circuit has held that verbal abuse/harrassement or name-calling by a prison guard does not amount to an Eighth Amendment violation. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997) (citing *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5th Cir.1993)). The "mere threatening language and gestures of a custodial office[r] do not, even if true, amount to constitutional violations." *Robertson v. Plano City of Texas*, 70 F.3d 21, 24 (5th Cir.1995). See *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5th Cir.1993) (holding that claims of verbal abuse and harassment are not actionable under § 1983).

### 3. *Racial Discrimination*

Plaintiff's conclusory statements that defendants are discriminating against him on the basis of race are insufficient to establish a constitutional violation.  In this case, he has failed to allege sufficient facts that would allow him to maintain his action against the defendants.  In fact, plaintiff  admits that he was called out of his dorm to meet with all of the head wardens as well as the director from IAD. He further admits that IAD sent out a "nice lady who through her, myself and the wardens tried to work things out."  His statements regarding discrimination are conclusory and do not show any constitutional violation.  Accordingly, the Court recommends that, to the extent plaintiff seeks to allege a claim of racial discrimination under § 1983, such a

claim should be dismissed for failing to state a claim and/or for frivolousness.

### 4.     *Access to the Courts*

Plaintiff claims that his constitutional rights were violated when he was denied access to legal material and when officials tampered with his mail.[2] Prisoners are guaranteed the right of access to the courts by the Untied States Constitution, however, in this action, plaintiff's claims do not rise to the level of a constitutional violation. In *Bounds v. Smith*, 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977), the Supreme Court held that prisoners have a fundamental constitutional right to "adequate, effective, and meaningful" access to the courts. See also, *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), cert. denied, 522 U.S. 995 (1997). A prisoner's right of access is not unlimited, "[i]t encompasses only 'a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement.' " *Id*. at 310-311 (quoting *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 2182, 135 L.Ed.2d 606 (1996)). In *Lewis v. Casey*, the Supreme Court found that the right of access to the courts does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. 116 S.Ct. at 2182. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly

---

[2] To establish a constitutional violation based upon the interference with prisoner mail, the prisoner must state a cognizable claim either for denial of the right to free speech or an denial of access to the courts violation. *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993); *Walker v. Navarro County*, 4 F.3d 410, 413 (5th Cir. 1993).
      As stated above, to state a valid constitutional claim under § 1983 for denial of access to the courts due to interference with an inmate's legal mail, an inmate must allege that a defendant's deliberate and malicious interference actually impeded his access to the court or prejudiced an existing action. Accordingly, plaintiff must sustain an actual injury as a result, of the alleged interference. See *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998); *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999).

constitutional) consequences of conviction and incarceration. *Id*. Further, prison officials have considerable discretion in choosing the mechanism and forms of assistance they will furnish to prisoners for the purpose of allowing prisoners to file non-frivolous legal claims. See *Lewis*, at 2182, ("Of course, we leave it to prison officials to determine how best to ensure that inmates... have a reasonably adequate opportunity to file non-frivolous legal claims challenging their convictions or conditions of confinement.") "While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d at 821. See also *Lewis v. Casey*, 518 U.S. at 349-355, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996). The Supreme Court in *Lewis*, explained that before an inmate may prevail on a claim that his constitutional right of access to the courts was violated, he must demonstrate that the suffered "actual injury"--i.e. that the denial of access "hindered his efforts to pursue a legal claim." 518 U.S. at 351. See also, *McDonald v. Steward,* 132 F.3d 225, 231 (5th Cir.1998); *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir.1998) (without proving actual injury, the prisoner/plaintiff cannot prevail on an access-to-courts claim); *Chandler v. Baird*, 926 F.2d 1057, 1063 (5th Cir.1991)(A civil rights claim cannot be based on "minor and short-lived impediments to access" in the absence of actual prejudice); *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir.), cert. denied, 504 U.S. 988, 112 S.Ct. 2974, 119 L.Ed.2d 593 (1992)(If a litigant's position is not prejudiced by the claimed violation, his claim of denial of access to the courts is not valid).

     In the instant case, plaintiff has not demonstrated that defendant's alleged actions hindered his ability to pursue a legal claim. Accordingly, absent any cognizable injury or prejudice,

plaintiff cannot raise a claim of denial of access to the courts and his claims are recommended dismissed for failing to state a claim upon which relief can be granted pursuant to 28 U.S. C. § 1915A(b)(1).[3]

### 5. *Lack of Injury*

Title 42 U.S.C. § 1997e(e) provides, "No federal civil action may be brought by a prisoner confined to a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Recently, the Fifth Circuit Court of Appeals determined that with respect to the application of the above cited statutory provision, "... it is the nature of the relief sought, and not the underlying substantive violation, that controls: Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury." *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005).

By their very nature, plaintiff's claims fall into the category of mental or emotional injury. This, coupled with his failure to allege physical injury, triggers the statutory bar of §1997e(e) precluding recovery of compensatory damages for emotional or mental injuries allegedly suffered as a result of a purported constitutional violation. Thus, plaintiff's claims in this regard are frivolous.

---

[3] In the alternative, the court notes that plaintiff's claims herein would nevertheless be barred by the physical injury requirement of § 1997e(e), which states that no federal civil action may be brought by a prisoner confined to a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. See, *Geiger v. Jowers,* 404 F.3d 371 (5th Cir. 2005), which held that § 1997e(e) applied to a prisoner's First Amendment claims. More specifically, *Geiger* stated that Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury. Thus, as in *Geiger*, plaintiff's failure to allege physical injury falls squarely under § 1997e(e)'s bar, precluding his recovery of compensatory damages for emotional or mental injuries allegedly suffered as a result of the purported First Amendment violation. In the present case, the very nature of plaintiff's claims fall with the scope of emotional injury.

*6.     Grievances*

To the extent that plaintiff complains that defendants did not respond to his complaints and grievances, plaintiff should be aware that such allegations do not implicate the constitution. More specifically, "when the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right to access to the courts, which is not compromised by the prison's refusal to entertain his grievance." *Oladipupo v. Austin*, 104 F. Supp.2d 626, 637, citing, *Flick v. Alba, et al,* 932 F.2d 728 (8th Cir. 1991).  The narrowing of prisoner due process protection announced in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), leaves plaintiff without a federally protected right to have his complaints and grievances investigated and resolved.  Inasmuch as the result of these complaints and grievances have no bearing on the duration of plaintiff's confinement, plaintiff cannot show the existence of a state created liberty interest in their investigation and ultimate resolution. See *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995).  In sum, as plaintiff does not have a constitutional right to have his grievances entertained, it follows that these defendants did not have a duty to take action with regard to plaintiff's grievances.  Consequently, any argument by plaintiff that the failure to answer or properly respond to his grievances violates his constitutional rights, lacks an arguable basis in law and should be dismissed as frivolous as such claims are not cognizable under §1983**.**

Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim in accordance with the provisions of 28

U.S.C. § 1915(e)(2)(B).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (14) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED,** in chambers, in Lake Charles, Louisiana, this 20th day of January, 2010.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE